UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TRAVIS WOODS,

                  Plaintiff,

  -v-                                                       6:10-CV-1350

CITY OF UTICA; POLICE OFFICER HOLTZ,[1]
in his individual and professional capacity;
JOHN AND JANE DOES, Utica police officers
in their individual and professional capacities;
ONEIDA COUNTY; DANIEL MIDDAUGH, in
his individual and professional capacity as
Sheriff of Oneida County; DEPUTY SHERIFF
GONDECK; DEPUTY SHERIFF EYRE;
DEPUTY SHERIFF HOGAN; DEPUTY
SHERIFF BATSON; DEPUTY SHERIFF LEAF;
and JOHN AND JANE DOES, Oneida County
correctional officers in their individual and
professional capacities,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                      OF COUNSEL:

BOSMAN LAW OFFICE                                 A.J. BOSMAN, ESQ.
Attorneys for Plaintiff                           NORMAN P. DEEP, ESQ.
6599 Martin Street
Rome, NY  13440

LONGERETTA LAW FIRM                               DAVID A. LONGERETTA, ESQ.
Attorneys for Plaintiff
298 Genesee Street
Utica, NY  13502

---

[1] This defendant's first name is James, and the correct spelling of his last name is "Holt." This spelling will be used hereinafter, and the Clerk of the Court is directed to amend the caption accordingly.

| | |
|---|---|
| OFFICE OF CORPORATION COUNSEL—<br>   CITY OF UTICA<br>Attorneys for Defendants City of Utica and<br>   Police Officer Holt<br>One Kennedy Plaza<br>Utica, NY  13502 | JOHN P. ORILIO, ESQ.<br>MARK C. CURLEY, ESQ. |
| GORMAN, WASZKIEWICZ, GORMAN &<br>   SCHMITT<br>Attorneys for Defendants Oneida County,<br>   Daniel Middaugh, Deputy Sheriff Gondeck,<br>   Deputy Sheriff Eyre, Deputy Sheriff Hogan,<br>   Deputy Sheriff Batson, and Deputy Sheriff<br>   Leaf<br>1508 Genesee Street<br>Utica, NY  13502 | BARTLE J. GORMAN, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Travis Woods ("plaintiff" or "Woods") filed this action on November 8, 2010. He filed an amended complaint on July 19, 2011, against defendants the City of Utica ("the City"); Officer Holt of the Utica Police Department ("Officer Holt"); Oneida County ("the County"); Daniel Middaugh, former Sheriff of Oneida County ("Sheriff Middaugh"); and Oneida County Corrections Officers Jason Gondeck ("CO Gondeck"), Patricia Eyre ("CO Eyre"), Kimberly Hogan ("CO Hogan"), Michael Batson ("CO Batson"), and Mark Leaf ("CO Leaf").[2] Plaintiff brings federal causes of action alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (2006) ("ADA"); the Rehabilitation Act, 29 U.S.C.

---

[2] The City and Holt will be referred to as "the City defendants."  The County, Sheriff Middaugh, and the individual Corrections Officers will be referred to as "the County defendants."

§§ 701–796l (2006); and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. He also brings a state law cause of action for alleged violations of New York Human Rights Law.

The City and County defendants have each moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff has responded in opposition to both motions, and defendants replied. The motions were considered on submit.

## II. **FACTUAL BACKGROUND**

The parties present different versions of the facts. The following is an account of the facts viewed in the light most favorable to plaintiff, the non-movant. Woods, a paraplegic, has been wheelchair-bound since 1993. On October 29, 2009, he was arrested by defendant Officer Holt for possession of cocaine on Elizabeth Street in Utica, New York. Officer Holt summoned a police van to transport plaintiff to the police station. However, plaintiff advised that he could not be transported in the van because it was not equipped with a wheelchair lift and locks. In response, Officer Holt opened the front passenger door of his car, an unmarked four-door sedan, and instructed plaintiff to get in the car. Plaintiff's handcuffs were removed, and he lifted himself onto the passenger seat. Officer Holt re-cuffed plaintiff, placing the handcuffs in front of his body, but did not secure him with a seat belt. The ten-minute ride to the police station was without incident.

Upon arrival at the police station, Officer Holt took the handcuffs off Woods so he could maneuver himself back into his wheelchair. Officer Holt and another officer then lifted plaintiff and his wheelchair, carried him up several steps, and wheeled him into the building. Plaintiff was processed in the police station, arraigned in the adjoining city court building, and turned over to the custody of defendants CO Gondeck and CO Leaf to be transported to the

Oneida County Correctional Facility ("OCCF" or "jail").[3] The Oneida County Sheriff's Office van that these defendants used was not equipped with a wheelchair lift or locks. Instead, they lifted plaintiff out of his wheelchair, carried him through the side door of the van, and placed him on the floor of a private compartment in the middle of the van. Plaintiff then maneuvered himself onto a bench seat. This movement caused his pants and underwear to fall, exposing him to the officers and anyone passing by. Plaintiff's wheelchair was placed in the back of the van.

Before leaving the parking lot, Woods—who requires a catheter to urinate due to his medical condition—advised that he needed to urinate. Defendants CO Gondeck and CO Leaf gave him an empty plastic soda bottle from the city court building. Plaintiff catheterized himself and attempted to urinate into the bottle. However, the van started moving, and he was thrown about the inside of the compartment because he had not been secured to the bench with a seat belt. This movement caused plaintiff to urinate on himself and one of his legs to spasm during the approximately fifteen minute ride to the OCCF.

Upon arrival at the OCCF, Woods maneuvered himself from the bench seat to the floor of the van and, eventually, to a wheelchair. This took several minutes, and other inmates watched him struggle. Plaintiff was made to use a generic facility wheelchair, which caused him discomfort, for approximately two hours before his customized wheelchair was inspected and returned. Plaintiff was classified by defendant CO Hogan, a Classifications Officer at OCCF, and placed in the medical unit. Defendant CO Eyre, an Admissions Officer at the jail, performed an initial medical screening.

---

[3] In his amended complaint, plaintiff alleges that defendant CO Eyre, not CO Leaf, assisted CO Gondeck with the transport. In the motion paperwork, however, the parties agree that CO Leaf and CO Gondeck transported plaintiff from the City court to the jail on October 29, 2009.

Woods was released from the medical unit into the general population on November 3, 2009. He remained in the jail for approximately two weeks and was released on bail on November 13, 2009. During his incarceration he was not provided with enough sterile catheters and had to urinate into a dirty milk carton.[4] Further, he did not receive his prescription pain medication and was only given one suppository during his entire stay at the OCCF even though he requires one every other day to ensure regular bowel movements.

While Woods was incarcerated he was transported to court proceedings on November 4 and 13, 2009, by the County defendants in vehicles that were not equipped with a wheelchair lift or locks.[5] The County defendants attempted to secure wheelchair-accessible transportation through a private service, but that service did not respond to the request. Woods did not file any grievances while incarcerated at the OCCF.

## III. DISCUSSION

The City and County defendants argue that they are entitled to summary judgment on all claims because: (1) plaintiff was provided with reasonable accommodations for his disability; (2) there is no evidence that they discriminated against him; (3) plaintiff received adequate care for his medical needs; (4) they are entitled to qualified immunity; and (5)

---

[4] Plaintiff is inconsistent as to how many catheters he requires or was provided during his incarceration. In the amended complaint, he alleges that he needs four catheters per day but was provided with three during his entire stay at the OCCF. In his response to the County defendants' interrogatories, he maintains that he requires one catheter every four hours but was given only three catheters for his entire stay. In his response to defendants' motions for summary judgment and during his deposition, however, he claims he was given only one catheter to use during his two-week incarceration.

[5] On November 4, 2009, defendant CO Batson assisted other corrections officers in lifting plaintiff into a vehicle at the OCCF. This appears to be the only personal involvement on CO Batson's part. During CO Batson's deposition, plaintiff's counsel stated twice on the record that he "released" CO Batson from this lawsuit. Batson Aff., Dkt. No. 46-6, Ex. A, 7–8, 13. (The pagination corresponds to the page numbers as assigned on CM/ECF. This convention will be used throughout the order for citations to exhibits.) He will therefore be dismissed from the case.

plaintiff did not file a notice of claim alleging a violation of New York Human Rights Law.[6]

### A.  Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986).  A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim.  Id. at 250 n.4, 106 S. Ct. at 2511 n.4.  The failure to meet this burden warrants denial of the motion.  Id.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Id. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party.

---

[6]  The City also asserts that plaintiff fails to identify a municipal policy or practice on which to justify § 1983 liability under Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978).  However, the § 1983 claims—the fourth and fifth causes of action for violations of the Equal Protection and Due Process Clauses—are only asserted against the individual defendants, not the City.

Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B.  ADA and Rehabilitation Act

In the first two causes of action delineated in the amended complaint, Woods alleges that the City and the County violated the ADA and Rehabilitation Act.[7]  He specifically claims that they failed to provide him with a reasonable accommodation by way of a wheelchair-accessible vehicle and, therefore, denied him the benefit of safe and appropriate transportation in light of his disability.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (2006).[8]  The Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29

---

[7] To the extent the third delineated cause of action asserts an ADA claim against the individual defendants, such will be dismissed.  Individual defendants can only be sued under the ADA in their official capacities for prospective injunctive relief.  Harris v. Mills, 572 F.3d 66, 72–73 (2d Cir. 2009).  However, because this would ultimately hold the City and the County liable, any ADA claims against the individual defendants will be dismissed as redundant.  See Booker v. Bd. of Educ., 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002) (Munson, S.J.).

[8] Although plaintiff does not specifically invoke Title II of the ADA in his amended complaint, it is assumed that his ADA claims are brought under this Title based on the nature of the factual allegations.

U.S.C. § 794(a) (2006).  These claims will be considered together as these acts, despite subtle differences in language, "impose identical requirements."  Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999); see also 42 U.S.C. § 12133 (2006).  It is undisputed that the City and the County receive federal funding, thus bringing them within the ambit of the Rehabilitation Act.  See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

To state a claim under these acts, Woods must show that:  (1) he is a qualified individual with a disability; (2) the defendants are public entities; and (3) he was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants by reason of [his] disabilities."  Id.  It is undisputed that plaintiff is a qualified individual with a disability and that the City and the County are public entities.  The issue is instead whether defendants denied plaintiff the benefit of their service by reason of his disability.

The arrest of an individual, including post-arrest transportation, "is a 'service, activity, or benefit' of a police department and is thus covered under the ADA."  Nicholas v. City of Binghamton, No. 10-CV-1565, 2012 WL 3261409, at *13 (N.D.N.Y. Aug. 8, 2012) (McAvoy, S.J.).  The ADA imposes an obligation to reasonably accommodate disabled persons with "safe and appropriate" post-arrest transportation.  Ryan v. Vt. State Police, 667 F. Supp. 2d 378, 387 (D. Vt. 2009); Gorman v. Bartch, 152 F.3d 907, 913 (8th Cir. 1998); see also 28 C.F.R. § 35.130(b) (a public entity may not provide service in a manner denying disabled individuals equal benefit of the service).  An arrestee can establish liability under the ADA and Rehabilitation Act by showing defendants "failed to provide a reasonable accommodation" for his disability during the course of the arrest and post-arrest, causing him to suffer greater injury or indignity than other arrestees.  Nicholas, 2012 WL 3261409, at *13;

see also Ryan, 667 F. Supp. 2d at 387 (collecting cases).[9]  A reasonable accommodation is one that gives the disabled person "meaningful access" to the services sought.  Henrietta D., 331 F.3d at 282.

   **1. The City**

   Woods claims that the City failed to provide a reasonable accommodation for his disability when Officer Holt transported him in the front passenger seat of a police car on October 29, 2009.  In his deposition, however, plaintiff acknowledged that he requested not to be transported in a police van.  He further admitted that he is able to lift himself out of his wheelchair and into a sedan as long as someone holds his wheelchair steady for him.  When asked whether he had any problem getting into the police car, he responded:  "No, not really, no."  Pl.'s Dep. Tr., Dkt. No. 46-14, 20:15–16.  Moreover, this particular vehicle was an unmarked police car without the radios and computers that crowd the interior of a marked car.  Plaintiff also noted that he was able to get out of the car in the same manner he usually exits other cars—by lifting himself out of the seat and into his wheelchair, which Officer Holt held for him.  He does not allege that this form of transportation caused him any injury or indignity whatsoever.

   Moreover, Woods reported that he has ridden in passenger cars "thousands of times" despite his disability.  Id. at 100:22–23.  In fact, he was transported to Utica City Hall for his deposition in a four-door sedan.  In short, there is no issue of material fact regarding the ADA and Rehabilitation Act claims against the City related to plaintiff's transportation from the

---

   [9] Notably, despite the "by reason of . . . disability" language, a plaintiff does not have to establish a "disparate impact" to succeed on a reasonable accommodation claim under the ADA and Rehabilitation Act.  See Henrietta D., 331 F.3d at 273–79.

scene of his arrest to the police station on October 29, 2009. He was provided with meaningful access to the services of the City, and no reasonable jury could find in his favor on this claim.

Accordingly, the City's motion for summary judgment will be granted with respect to the ADA and Rehabilitation Act causes of action.

### 2. The County

Several issues of material fact preclude granting summary judgment to the County. Woods alleges that on October 29, 2009, defendants CO Gondeck and CO Leaf lifted him out of his wheelchair and placed him on the floor of an Oneida County Sheriff's Office van, forcing him to maneuver himself onto the bench seat. He claims that this caused his pants and underwear to fall, exposing his genitals. He further claims that he was not secured to the bench with a seatbelt, causing him to be thrown about the passenger compartment and suffer leg spasms during the ride to the OCCF. Although in his deposition plaintiff acknowledged that he did not urinate on himself during the ride, as alleged in the amended complaint, he alleges that he had to urinate into an empty soda bottle and handle his sterile catheter with his hands that were dirty from moving himself around on the floor of the van. Finally, he claims that CO Gondeck and CO Leaf stood by as he struggled to maneuver himself out of the van and into his wheelchair while other inmates watched.

The County defendants dispute Woods's version of the facts. They maintain that he requested to be placed on the floor of the van and wanted to maneuver himself onto the bench seat to reduce the risk of injury. They also argue that plaintiff made no complaints about urinating into the soda bottle. They assert that he finished urinating and was safely seat-belted to the bench seat by CO Leaf before the van began moving. They deny that he

was thrown about or injured in any way during the ride. However, defendants CO Batson, CO Gondeck, and CO Leaf all denied receiving any training regarding how to transport disabled inmates. Lieutenant Kenneth Shanley ("Lt. Shanley"), who supervises inmate transportation for the Oneida County Sheriff's Office, testified that none of his transportation officers have received such training. Lt. Shanley advised that he was not aware of any policy or procedure guiding how his officers are to transport disabled persons.[10]

In light of these differing accounts, an issue of material fact exists as to whether Woods was denied the benefit of safe and appropriate transportation by the County on October 29, 2009. See Sayers v. City of New York, No. CV-04-3907, 2007 WL 914581, at *8 (E.D.N.Y. Mar. 23, 2007) (finding an issue of fact for trial where paraplegic prisoner sustained injuries when his wheelchair was improperly secured by untrained officers and tipped backwards during transport in a police van). Indeed, when viewed in the light most favorable to Woods, there is sufficient evidence in the record to permit a rational trier of fact to find that the County failed to provide a reasonable accommodation for his disability, thereby causing greater injury or indignity than other arrestees endure. See, e.g., Barnes v. Gorman, 536 U.S. 181, 183–84, 122 S. Ct. 2097, 2099–2100 (2002) (jury below found defendants violated ADA by removing paraplegic arrestee from his wheelchair and improperly securing him to a bench in a police van, resulting in serious injuries when he fell from the bench and causing him to urinate on himself when his urine bag ruptured).

---

[10] Lt. Deborah Stanton, the Training Officer for the Oneida County Sheriff's Office, testified that the Sheriff's Office has developed lesson plans and policies specifically addressing the transportation of inmates with special needs. See Stanton Aff., Dkt. No. 46-13. While these plans and policies were reportedly created and implemented prior to 2009, the undisputed fact remains that all of the defendant corrections officers who transported Woods deny receiving any training regarding the transportation of disabled inmates. Further, these defendants' supervisor is unaware that such policies and training even exist.

However, the County is entitled to summary judgment to the extent plaintiff's ADA and Rehabilitation Act claims involve his transportation to court proceedings on November 4 and 13, 2009. Woods claims that he refused to ride in the van again and was instead transported from the OCCF to court in the back seat of an Oneida County Sheriff's Office patrol car on these dates. He acknowledges that he was able to lift himself into and out of the car, much like he had done with Officer Holt on the day of his arrest and does on other occasions when he is not incarcerated. As noted above, plaintiff has ridden in a sedan thousands of times. Aside from being uncomfortable by virtue of the limited leg-room in the back of the patrol car, these rides caused neither injury nor indignity.

Accordingly, the County's motion for summary judgment will be denied with regard to the October 29, 2009, transport of Woods in the van but granted with respect to the November 4 and 13, 2009, transports via patrol car.

### C. Equal Protection

Woods alleges that the individual defendants discriminated against him based on his disability in violation of the Equal Protection Clause of the Fourteenth Amendment.

Unlike the ADA and Rehabilitation Act claims, to adequately allege an equal protection violation plaintiff must establish that he was treated differently than other similarly-situated arrestees "as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005); see also Krug v. Cnty. of Rennselaer, 559 F. Supp. 2d 223, 240 (N.D.N.Y. 2008) (McAvoy, S.J.). However, "[c]onclusory allegations of disparate treatment or plaintiff's personal belief of discriminatory intent is insufficient" to prevail on an equal protection claim. Nash v. McGinnis, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008) (internal quotation marks omitted).

Plaintiff makes only conclusory assertions that defendants discriminated against him because of his disability. He does not allege that he was treated differently than other similarly-situated arrestees. Moreover, he does not even respond to the defendants' motion for summary judgment on this claim. Accordingly, defendants' motions will be granted as to the equal protection cause of action.[11]

### D. Due Process

Woods next alleges that the individual defendants failed to provide adequate medical treatment and medications. He specifically claims that he did not receive a sufficient amount of sterile catheters and suppositories and was not provided with his prescription pain medication during his two-week incarceration at the OCCF.[12]

The medical needs of an arrestee held in state custody are protected by the Due Process Clause of the Fourteenth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). The official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the defendant official "disregarded a risk of harm to the plaintiff of which the defendant was aware." Id. at 71. This requires a two-part showing that:

---

[11] In his deposition, Woods alleged—for the first time—that his treatment by the County defendants was also indicative of racial discrimination. However, the only evidence he cited to support this allegation was a comment made by defendant CO Leaf, who reportedly advised plaintiff that he had no rights because he was a convicted felon and told him to "shut up" and "stop crying" when he complained about his transportation. Pl.'s Dep. Tr., 49. Such comments do not support an inference of racial discrimination, and plaintiff does not make such a legal argument in his response to defendants' motions. Thus, to the extent he alleges racial discrimination, such claim will be dismissed.

[12] Although plaintiff lists Officer Holt in this cause of action, the pertinent facts occurred while he was incarcerated in the OCCF. Therefore, Officer Holt had no personal involvement in these alleged constitutional violations, and the due process claim against him will be dismissed. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (noting that the personal involvement of a defendant is an essential element of a § 1983 claim). Similarly, plaintiff acknowledges that Sheriff Middaugh had no personal involvement in the alleged violation of his rights. See Middaugh Aff., Dkt. No. 46-4, Ex. A., 1. Plaintiff did not submit any grievances during his incarceration, and there are no allegations that Sheriff Middaugh was otherwise aware of the alleged violations of plaintiff's constitutional rights. Therefore, the due process claim against Sheriff Middaugh will be dismissed as well.

(1) the plaintiff had an objectively "serious medical condition" that (2) the defendant met with "deliberate indifference." Id. at 72 (internal quotation marks omitted).

In cases such as this where the alleged inadequacy is in the medical treatment given, the first inquiry is narrow. Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006). "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." Id. (internal quotation marks and alteration omitted). The deliberate indifference showing required by the second prong is akin to criminal recklessness. Id. In essence, a plaintiff must show that the defendants acted or failed to act "while actually aware of a substantial risk that serious inmate harm will result." Id. The defendants need not desire to cause the inmate harm; it is enough that they are aware of a substantial risk of harm. Id.

The County defendants do not seriously dispute that Woods, a paraplegic who requires the use of a catheter to urinate and suppositories to maintain regular bowel movements, suffers from a serious medical condition. Indeed, plaintiff alleges that the County defendants caused an unreasonable delay and substantial interruption in his ongoing treatment—i.e. the withholding of his catheters, suppositories, and prescription medication during his two-week incarceration. The County defendants instead argue that they were not deliberately indifferent to any of plaintiff's medical needs of which they were aware.

Upon his arrival at the OCCF on October 29, 2009, Woods was classified by defendant CO Hogan and placed in the medical unit. Defendant CO Eyre performed an initial medical screening and noted that Woods requires a suppository every other day, uses

a catheter, and takes oxycodone for pain associated with a bullet lodged in his spine. See Stock Aff., Dkt. No. 46-5, Ex. A, 11 ("Medical R.").

During his time in the medical unit, Woods complained of constipation but refused to take a laxative pill orally. He instead requested a suppository and was given one on November 1. The medical record indicates that five refills of suppositories were ordered by phone on that date. However, there is no indication that plaintiff was provided with any suppositories after November 1. In his deposition, plaintiff claims that he was given "a handful" of suppositories on the day he left the OCCF, November 13, 2009. Pl.'s Dep. Tr., 82:3–4. He further testified that because he was not provided with suppositories from November 1 to November 13, his stomach became bloated and he "had to use my hands to have a bowel movement, and that caused me to bleed." Id. at 85:19–22.

In short, there is sufficient evidence in the record to show that the County defendants knew Woods needed a suppository every other day to maintain regular bowel movements but only provided him with one during his entire two-week incarceration. Thus, there remains an issue of material fact as to whether the County defendants were deliberately indifferent to plaintiff's known medical needs.

However, the County defendants are entitled to summary judgment to the extent that plaintiff alleges they were deliberately indifferent to his need for catheters and prescription pain medication. Woods was given a new catheter on November 1. On November 3, it was noted that his catheter was "draining well," and he denied experiencing any problems. Medical R., 24. Unlike with the suppositories—where the County defendants knew plaintiff needed one every other day—there is no evidence that they knew he required a new catheter every four hours as he now claims. In fact, the records from the pharmacy that

usually fills plaintiff's prescriptions indicate he received only ten catheters for the time period spanning August 30 to October 30, 2009. Id. at 21–22. Plaintiff never requested additional catheters after November 1, nor does he allege any injury as a result of defendants' failure to provide same. Similarly, plaintiff never complained of pain or requested pain medication during his incarceration. Although he informed defendant CO Eyre that he takes oxycodone, this medication did not appear on the list of prescriptions obtained from his pharmacy. See id. at 22.

In short, there is nothing in the record from which to infer that the County defendants knew Woods needed more catheters on a regular basis or required prescription pain medication. Accordingly, the County defendants' motion for summary judgment on plaintiff's due process claim will be denied, but this claim is limited to the County defendants' alleged deliberate indifference to Woods's need for a sufficient amount of suppositories during his incarceration.

The County defendants argue they are entitled to qualified immunity, which protects state actors from liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (internal quotation marks omitted). Even if the rights are clearly defined, qualified immunity may still be available to defendants if it was "objectively reasonable" for them to believe their acts did not violate those rights. Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).

The County defendants will not be granted qualified immunity because "a pretrial detainee's right not to be recklessly denied treatment for a serious medical condition was 'clearly established' at the time these events transpired." Mills v. Fenger, 216 F. App'x 7, 11

(2d Cir. 2006) (summary order) (citing Liscio v. Warren, 901 F.2d 274, 276–77 (2d Cir. 1990)).  Nor can it be considered objectively reasonable for them to believe that withholding suppositories for twelve days from a paraplegic inmate who requires one every other day does not violate his rights.

### E.  New York Human Rights Law

Plaintiff claims the City, Sheriff Middaugh, and the individual Corrections Officers discriminated against him in violation of New York Human Rights Law ("NYHRL").  The County defendants argue that this claim must be dismissed because plaintiff did not file a timely notice of claim as required by section 52 of the New York County Law.

An aggrieved party must file a notice of claim that complies with General Municipal Law section 50-e before a tort claim can be brought against a county.  N.Y. COUNTY LAW § 52(1).[13]  "[A] cause of action under the Human Rights Law, while not a traditional tort, is subject to the notice of claim requirements of County Law § 52."  Bielski v. Green, 674 F. Supp. 2d 414, 427 (W.D.N.Y. 2009) (internal quotation marks omitted).  As the County is obligated to indemnify the individual defendants, it follows that this notice of claim requirement also applies to claims against County employees in their official capacities.  See id.; Anderson v. Nassau Cnty. Dep't of Corr., 558 F. Supp. 2d 283, 303 (E.D.N.Y. 2008) (applying the notice of claim requirement in County Law section 52 to plaintiff's claims against the county "and the individual defendants acting in their official capacities").

It is undisputed that plaintiff did not serve a timely notice of claim on the County

---

[13] Plaintiff's reliance on Lee v. City of Syracuse, 603 F. Supp. 2d 417 (N.D.N.Y. 2009) for the proposition that a notice of claim under General Municipal Law section 50-e is not required for a NYHRL cause of action is misplaced.  The defendant in Lee was a municipality, not a county, and it was specifically noted that County Law section 52 "is much broader in scope and it allows for a notice of claim requirement in more types of claims that General Municipal Law § 50-e."  Id. at 445.

defendants. Therefore, his NYHRL claim is barred and will be dismissed to the extent it is asserted against the individual County defendants in their official capacities.[14]

Moreover, the remainder of this claim will be dismissed because the amended complaint does not identify the section of the NYHRL on which this claim is based. Nor has plaintiff clarified this matter in his response to the defendants' motions. The only specific section discussed in any of plaintiff's paperwork is the aiding and abetting provision of the NYHRL, New York Executive Law section 296(6). However, such a claim cannot stand alone. See Preston v. Hilton Cent. Sch. Dist., __ F. Supp. 2d __, 2012 WL 2829452, at *8 (W.D.N.Y. 2012) (dismissing a claim brought under section 296(6) because the prior dismissal of the only other NYHRL claim "defeats the plausibility of any allegation that the defendants aided, abetted, incited, compelled or coerced others to commit a separate violation of the Human Rights Law"); JG & PG ex rel. JGIII v. Card, No. 08 Civ. 5668, 2009 WL 2986640, at *12–13 (S.D.N.Y. Sept. 17, 2009) (same).

Indeed, individual defendants cannot be held liable for aiding and abetting the discrimination of another if no underlying violation of NYHRL has been established. See Barbato v. Bowden, 63 A.D.3d 1580, 1582 (N.Y. App. Div. 4th Dep't 2009) (defendant "cannot be held liable for aiding and abetting a violation of the Human Rights Law where, as here, no violation of the Human Rights Law by another party has been established" (internal quotation marks and alterations omitted)). As explained above, there is no evidence to support plaintiff's conclusory allegation that he was discriminated against because of his disability or race. Thus, the individual defendants cannot be liable for aiding and abetting

---

[14] The NYHRL claim, delineated in the third cause of action in the amended complaint, is not asserted against the County itself.

such discrimination in violation of the NYHRL.

Accordingly, defendants' motions for summary judgment will be granted with respect to the NYHRL claim.

## IV. **CONCLUSION**

There is insufficient evidence in the record to establish an issue of material fact as to whether the City violated the ADA or Rehabilitation Act when defendant Officer Holt transported Woods in an unmarked police car on October 29, 2009.  Similarly, the County is entitled to summary judgment on the ADA and Rehabilitation Act causes of action to the extent they pertain to the transportation of plaintiff in patrol cars on November 4 and 13, 2009.  However, there remains an issue of material fact as to whether the County failed to provide a reasonable accommodation when plaintiff was transported by van from the City courthouse to the OCCF on October 29, 2009.

Additionally, when viewed in the light most favorable to Woods, there is sufficient evidence in the record for a jury to conclude that the County defendants were deliberately indifferent to his need for suppositories every other day.  However, plaintiff does not identify any evidence from which to infer that defendants purposely discriminated against him due to his disability or race in violation of the Equal Protection Clause.  Finally, plaintiff failed to serve the County defendants with a timely notice of claim, and there is neither a specific allegation of an NYHRL violation nor an indication of an underlying act of discrimination.

Therefore, it is

ORDERED that

1. The City defendants' motion for summary judgment (Dkt. No. 48) is GRANTED;

2. All claims against the defendants City of Utica and Police Officer James Holt are

DISMISSED;

    3. The County defendants' motion for summary judgment (Dkt. No. 46) is GRANTED in part and DENIED in part;

    4. All claims against defendant Deputy Sheriff Michael Batson are DISMISSED;

    5. The equal protection and New York Human Rights Law causes of action are DISMISSED;

    6. The ADA cause of action against the individual defendants is DISMISSED;

    7. The ADA and Rehabilitation Act causes of action against the defendant County of Oneida with respect to the transportation of plaintiff on November 4 and 13, 2009, are DISMISSED;

    8. The due process cause of action against defendant Sheriff Daniel Middaugh is DISMISSED; and

    9. The due process cause of action against defendants Deputy Sheriff Jason Gondeck, Deputy Sheriff Patricia Eyre, Deputy Sheriff Kimberly Hogan, and Deputy Sheriff Mark Leaf with respect to the provision of catheters and prescription pain medication during plaintiff's incarceration is DISMISSED.

    IT IS SO ORDERED.

_____
United States District Judge

Dated: November 5, 2012
       Utica, New York.

The following claims remain for trial: (1) The ADA and Rehabilitation Act causes of action against the defendant County of Oneida with respect to the transportation of plaintiff on October 29, 2009; and (2) the due process cause of action against defendants Deputy Sheriff Jason Gondeck, Deputy Sheriff Patricia Eyre, Deputy Sheriff Kimberly Hogan, and Deputy Sheriff Mark Leaf with respect to the provision of suppositories during plaintiff's incarceration.